UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODRIQUES JACKSON,

        Petitioner,

                                                  CIVIL NO. 2:09-CV-11928

v.                                          HONORABLE PAUL D. BORMAN
                                               UNITED STATES DISTRICT COURT

NICK LUDWICK,

        Respondent.
_____/

**OPINION AND ORDER GRANTING AN EVIDENTIARY HEARING ON PETITIONER'S FIRST CLAIM:
EVIDENTIARY HEARING SCHEDULED FOR MAY 17, 2011 AT 2:00 P.M.**

Rodriques Jackson, ("Petitioner"), presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Lawrence J. Bunting, petitioner challenges his conviction for three counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(e); and three counts of felony-firearm, M.C.L.A. 750.227b. For the reasons stated below, the Court will order an evidentiary hearing on petitioner's first claim involving the absence of retained counsel from his jury deliberations.

**I. BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court. Petitioner was also found not guilty of one count of first-degree criminal sexual conduct, one count of third-degree criminal sexual conduct, and one count of felony-firearm.

Petitioner was convicted of sexually assaulting the victim at gunpoint in his apartment in

Royal Oak Township, Michigan. Petitioner's defense at trial, presented through his testimony and that of other witnesses, was that the victim had engaged in consensual sex with him.

Following his conviction, petitioner filed a motion in the trial court for a *Ginther* [1] hearing on his first claim, which was denied. Petitioner's conviction was affirmed on appeal. *People v. Jackson,* No. 273310 (Mich.Ct.App. December 27, 2007); *lv. den.* 481 Mich. 878, 748 N.W.2d 833 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied due process because his defense attorney was structurally ineffective by not appearing during the jury deliberations phase of the trial.

II. Petitioner was denied effective assistance of counsel when his trial counsel intentionally introduced evidence that Petitioner exercised his right to remain silent after he was issued *Miranda* warnings.

III. Petitioner was denied a fair trial due to the prosecutor's remarks during her closing argument. [2]

## II. DISCUSSION

In his first claim, petitioner alleges that he was denied the effective assistance of counsel because his retained counsel was not present during jury deliberations when the trial court answered several notes from the jury or when the verdict was announced. Petitioner contends that the absence of his retained counsel during these critical stages of his prosecution is a

---

[1] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

[2] The petition for writ of habeas corpus originally also included a claim that the petitioner was denied his right to confrontation when the trial court refused to permit him to inquire into the victim's prior allegations of rape. This was numerically listed as the third claim in the petition. Respondent moved to dismiss the petition on the ground that this claim had not been exhausted with the state courts. In *lieu* of dismissing the petition for writ of habeas corpus, this Court permitted petitioner to delete this claim from his petition and ordered respondent to file an answer addressing the merits of the three exhausted claims. *See Jackson v. Ludwick*, No. 2010 WL 376114 (E.D. Mich. January 25, 2010). In light of the fact that petitioner's Confrontation Clause claim has been deleted, this Court has renumbered his prosecutorial misconduct claim, which was numerically petitioner's fourth claim in his original petition, as his third claim.

structural error that requires the automatic reversal of his conviction.

In the middle of petitioner's trial, petitioner's counsel, Bertram L. Johnson, failed to appear at trial because of a medical condition. Trial was adjourned for the day. (Tr. Vol. III, pp. 241-42).

Following closing arguments, petitioner's defense counsel informed the trial court judge that he might have to go to the hospital. Then, the following exchange occurred:

> THE COURT: Now, Mr. Johnson has received a message that he may have to go to the hospital this morning, is that correct?
>
> MR. JOHNSON: Yeah. This afternoon, Judge. I'm still - -
>
> THE COURT: Who are you going to have stand in for you?
>
> MR. JOHNSON: I'll try to find somebody.
>
> THE COURT: It's necessary that you have someone.
>
> MR. JOHNSON: I know. I know.
>
> THE COURT: Now, your son is not finished with law school; is that right?
>
> MR. JOHNSON: No Judge. I'll see if I can find something locally. I'll call around.
>
> THE COURT: Okay.
>
> (Tr. Vol. V, pp. 670-71).

At the end of the first day of deliberations, attorney Richard Lustig stood in for Mr. Johnson when the trial court judge discharged the jury for the day. The judge asked petitioner if it would be okay for Mr. Lustig to stand in for Mr. Johnson, and petitioner replied affirmatively. Mr. Lustig informed the court that he would be unable to be present for jury deliberations the following day, but advised the court that there "will be a hundred lawyers here that can do this, if

3

there's a problem." The prosecution advised the court that an attorney named Mr. Allen was "in the wings". (*Id.* at pp. 672-73).

Jury deliberations continued on June 20, 2006. At 3:31 p.m., the court went into session on petitioner's case. An attorney named Douglas Monds informed the judge that he was standing in for Bertram Johnson. It is unclear from the transcript: (1) whether petitioner was in the courtroom for the proceedings, (2) whether petitioner agreed to have Mr. Monds represent him, and (3) whether Mr. Monds consulted with petitioner with regard to the jury note(s) issues. The trial court judge informed the prosecutor and Mr. Monds that he had received conflicting messages from the jury. The first note indicated that the jury had reached a verdict, but three minutes later, the jury sent out another note asking, "Does a CSC [criminal sexual conduct] count with a gun in the room, does that automatically mean guilty of [the] firearm charge?" The judge stated that he had sent a note to the jury with the "approval of counsel" that the jury should refer to the jury instructions. Subsequently, the judge indicated that the jury sent out a message indicating that they were hung. With the permission of counsel, the judge sent a note to the jury to tell them to continue their deliberations because the jury had only been out less than a day. At 4:35 p.m., the case was again called into session in court, with an attorney named Elliot Allen for the defense. Again, there is no transcript indicating: (1) whether petitioner was in the courtroom for this proceeding, (2) whether petitioner agreed to have Mr. Allen represent him, and (3) whether Mr. Allen consulted with petitioner with regards to any jury note(s) issues. The jury was sent home for the day. (Tr. Vol. VI, pp. 678-82).

The jury returned a verdict at 2:32 on June 21, 2006. The defense attorney appearing was Anthony Lewis. Yet again, as to this fourth new lawyer standing to represent petitioner, there is

no transcript indicating: (1) whether petitioner agreed to have Mr. Lewis represent him, and (2) whether Mr. Lewis asked the judge to poll the jury. Prior to accepting the verdict, the judge indicated that there had been a "myriad of questions asked by the jury" and ordered that all of the jurors' notes be filed with the court record. (Tr. VII, pp. 688-89). Although petitioner failed to attach these jury notes to his petition, he did attach these jury notes as Appendix A to his application for leave to appeal to the Michigan Supreme Court, which this Court has reviewed. [3]

In rejecting petitioner's claim, the Michigan Court of Appeals ruled that petitioner had not been denied the assistance of counsel during a critical stage of the proceedings:

> The record reveals that defendant's retained counsel was not present during jury deliberations because of a medical condition. During deliberations, the jury sent several notes to the trial court. In response to the notes, the trial court encouraged the jury to continue its deliberations, handled "administrative" and "housekeeping" matters, and referred the jury to the previously provided instructions. In only one instance did the trial court provide a "substantive" instruction. In response to a juror's inquiry, the trial court instructed the jury that a "gun does not have to be pointed to be a threat." We agree with defendant that this particular communication between the court and the jury constituted a "critical stage" of the proceedings necessitating defendant's right to counsel. That said, however, defendant cannot establish that he was completely deprived of the assistance of counsel during this "critical stage" of the proceedings. Substitute counsel represented defendant throughout jury deliberations, without objection from defendant. Defendant's substitute counsel signed the trial court's proposed responses to the jury's notes, indicating their approval of the court's instructions. Accordingly, we find the presumed prejudice test of *Cronic*, *supra*, inapplicable here.
>
> Further, defendant has failed to show actual prejudice as a result of his retained counsel's absence during jury deliberations. Substitute counsel stood in for defendant's retained counsel throughout deliberations, and we disagree with defendant's assertion that "it was reversible error for [the jury's] questions to be reviewed by 'fill in' attorneys who could have had no real knowledge of the case." As indicated above, the majority of the communications between the jury and the trial court were "administrative" or "housekeeping" in nature and are presumed to be nonprejudicial. Furthermore, while the trial court provided one substantive

---

[3] *See* Application for Leave to Appeal, Appendix A [Court Dkt. # 6-12].

>instruction to the jury, that a "gun does not have to be pointed to be a threat," the instruction involved a question of law that any competent substitute attorney could review. Moreover, defendant has provided no evidence that he was actually prejudiced as a result of the instruction. Because defendant has failed to demonstrate how his retained counsel's presence during jury deliberations would have altered the outcome of the case, his ineffective assistance of counsel claim must fail.

*Jackson,* Slip. Op. at 2-3 (internal citations omitted).

The U.S. Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). The U.S. Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceedings. *Cronic*, 466 U.S. at 659, n.25; *United States v. Minsky*, 963 F. 2d 870, 874 (6th Cir. 1992).

The giving of a supplemental jury instruction is a critical stage of the criminal proceeding. *See Rushen v. Spain*, 464 U.S. 114, 119, fn. 4 (1983); *See also French v. Jones,* 332 F. 3d 430, 438-39 (6th Cir. 2003). Re-instructing a jury is also a critical stage of the proceedings for purposes of the Sixth Amendment right to counsel. *See Caver v. Straub,* 349 F. 3d 340, 350 (6th Cir. 2003). However, the trial court's re-reading of jury instructions that have previously been given to the jury is not a critical stage of the criminal proceedings, for Sixth Amendment purposes. *See Hudson v. Jones,* 351 F. 3d 212, 216-18 (6th Cir. 2003).

A federal court must grant an evidentiary hearing to a habeas corpus applicant if:

(1) the merits of the factual dispute were not resolved in a state hearing;

>(2) the state factual determination is not fairly supported by the record as a whole;
>(3) the fact finding procedure in state court was not adequate to afford a full and fair hearing;
>(4) there is a substantial allegation of newly discovered evidence;
>(5) material facts were not adequately developed at a state court hearing; or
>(6) for any reason it appears that state trier of fact did not afford applicant a full and fair fact hearing.

*Townsend v. Sain*, 372 U.S. 293, 313 (1963); 28 U.S.C.A. § 2243.

In deciding whether to grant an evidentiary hearing to a habeas petitioner, a federal habeas court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). A habeas petitioner is generally entitled to evidentiary hearing if he or she "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer,* 299 F. 3d 605, 610-11 (6th Cir. 2002)(*quoting Stanford v. Parker*, 266 F. 3d 442, 459 (6th Cir. 2001)(additional quotation omitted).

One of the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) states that if an applicant for a writ of habeas corpus has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:

>(A) the claim relies on:
>(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

    28 U.S.C.§ 2254 (e)(2).

Under the opening clause of § 2254 (e)(2), a failure to develop the factual basis of a claim by a habeas petitioner is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Diligence for purposes of the opening clause of this subsection of the AEDPA depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend upon whether those efforts would have been successful. *Id.* at 435. Diligence will require that the petitioner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.*

Federal-state comity is not served by stating that a prisoner has "failed to develop the factual basis of a claim" where he was unable to develop his or her claim in state court despite diligent efforts to do so. In that circumstance, an evidentiary hearing is not barred by U.S.C.§ 2254 (e)(2). *Williams*, 529 U.S. at 437; *See also Gonzalez v. Phillips,* 147 F. Supp. 2d 791, 802-803 (E.D. Mich. 2001). If there is no lack of diligence at the relevant stages in the state proceedings, a petitioner has not failed to develop the facts under the opening clause of the AEDPA governing whether a federal habeas petitioner may obtain an evidentiary hearing on a claim for which a petitioner has failed to develop a factual basis in state court proceedings, and petitioner will be excused from showing compliance with the balance of the subsection's requirements. *Id.*

Petitioner is entitled to an evidentiary hearing on his first claim involving the absence of retained counsel during the jury deliberations. Petitioner's claim, if true, could entitle him to relief. The Michigan Court of Appeals acknowledged that the trial court provided a substantive

8

instruction which constituted a critical stage of the proceedings when in response to a juror's inquiry, the trial court instructed the jury that a "gun does not have to be pointed to be a threat." This was a critical ruling in this case, since the jury appeared to be deadlocked on the key issue in this case, namely, whether petitioner forced the witness to have sex. Certainly, this question of whether just having a gun in the room amounted to a threat of force was a critical issue, yet the judge appears to have just instructed on his own. Again, there is no transcript concerning whether the judge discussed this proposed instruction with defense counsel, nor is there any indication whether petitioner agreed to be represented by substitute counsel when this jury note was answered, whether petitioner was present when the jury note was discussed, or whether substitute counsel discussed the contents of the jury note or the judge's proposed answer with petitioner.

The Michigan Court of Appeals ruled that none of the remaining responses by the judge to the jurors involved a critical stage of the proceedings because the answers involved either housekeeping matters or the re-reading of instructions previously given to the jurors. The Michigan Court of Appeals, however, ignored the judge's response to the following jury question:

> "On the possession of firearm counts.
>
> Please explain the first element when it states that it must be proven that the CSC [criminal sexual conduct] was committed, but it is not necessary that the defendant be convicted of that crime.
>
> These points appear to be contradictory."
>
> The Court answered: "These are words of ordinary meaning. There is not a contradiction."

The Michigan Court of Appeals also ignored the judge's response to the jurors' question

9

to define the word "indicia", in which the judge instructed the jurors that "The word 'indicia' means indication."

Later, the jurors sent the following note to the judge:

"A juror wants to use 'lack of struggle' by the victim and not 'attempting to flee' by the victim as a basis for a decision. Please state the law. The rest of the jury believes that a 'no' by the victim is enough and struggle and fleeing is not necessary. Please state the law."

The judge sent the following note to the jurors:

"The prosecutor does not have to show that the victim struggled or fled. Please refer to CJI 20.26."

Although the judge previously gave the jury CJI 2d 20.26 (Tr. Vol. V, p. 661), this Court notes that the trial court judge's response to the jurors' question was somewhat different than the standard language of CJI 2d 20.26, which states: [T]o prove this charge, the prosecutor does not have to show that [the complainant] resisted the defendant." By contrast, the trial judge's answer to jury indicated that "The prosecutor does not have to show that the victim struggled or *fled.*" (emphasis added). Because the language in the trial judge's answer appears to be different than the language in CJI 2d 20.26, this would appear to be a supplemental instruction. There is no indication whether the trial judge consulted with the parties prior to giving this answer, whether petitioner was present in the courtroom, or whether petitioner agreed to be represented by substitute counsel with regards to this jury note.

Contrary to the Michigan Court of Appeals' determination, the judge's answers to these three questions from the jury were not merely the re-reading of an instruction already given, but involved the giving of supplemental or additional instructions to the jury.

The Michigan Court of Appeals also ignores the fact that petitioner's retained counsel was not present on June 20, 2006, when the judge, after being informed that the jury was deadlocked, instructed the jurors to continue with their deliberations. The giving of an instruction to a deadlocked jury to continue with their deliberations is a critical stage of the proceedings for purposes of the Sixth Amendment. *French v. Jones,* 332 F. 3d at 438. Again, there is no indication whether petitioner was present in the courtroom when the trial judge gave the deadlocked jury instruction, whether petitioner agreed to have substitute counsel represent him when this instruction was given, or whether substitute counsel discussed the deadlocked jury instruction with petitioner.

Moreover, while the Michigan Court of Appeals made much of the fact that stand-by counsel were present during the jury deliberations, they ignored the fact that petitioner had retained Bertram L. Johnson as his counsel of choice. One element of the Sixth Amendment right to counsel is the right of a defendant who does not require appointed counsel to choose who will represent him or her. *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(*citing Wheat v. United States*, 486 U.S. 153, 159 (1988)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Id.* (*citing Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989)). Where a criminal defendant's right to be assisted by counsel of one's choice is wrongly denied, it is unnecessary for a reviewing court to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation. *Id.* at 148: "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of

11

the quality of the representation he received." *Id.*

Moreover, there is nothing from the record to indicate that petitioner waived his right to have Bertram L. Johnson present when each of these notes were responded to or when the jury was instructed to continue deliberating, nor is there any indication that petitioner was even present. A waiver of a right to a lawyer will not be lightly presumed and a trial judge must indulge every reasonable presumption against a waiver. *Brewer v. Williams,* 430 U.S. 387, 404 (1977); *Boyd v. Dutton*, 405 U.S. 1, 2 (1972); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Doubts about whether there has been a waiver must be resolved in favor of the Sixth Amendment. *Michigan v. Jackson*, 475 U.S. 625, 633 (1986). In order to establish that a defendant validly waived the right to counsel, the state bears a heavy burden of proving that the waiver was voluntary, knowing, and intelligent. *Brewer v. Williams*, 430 U.S. at 403. In the absence of any affirmative record, this Court cannot conclude that petitioner knowingly and intelligently waived his right to have counsel of choice present during these stages in his prosecution.

The Court further finds that petitioner exercised due diligence in presenting this claim in the Michigan courts. Petitioner filed a motion for a *Ginther* hearing, but this request was denied by the Oakland County Circuit Court.

"[S]ection 2254(e)(2) bars evidentiary hearings only if it was the *petitioner's* fault that the factual record was not developed in state court." *James v. Brigano,* 470 F. 3d 636, 642 (6th Cir. 2006)(emphasis original). "[W]here it is the state's fault that the habeas factual record is incomplete, the federal district court may grant a hearing under the AEDPA." *Gonzalez,* 147 F. Supp. 2d at 803. By filing a motion for a *Ginther* hearing in the state trial court, petitioner

12

exercised due diligence court to meet the standard set forth in 28 U.S.C. § 2254(e)(2). *Id.*

## III.  ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that an evidentiary hearing in this case with respect to petitioner's first claim.

The Court further instructs the parties to subpoena petitioner's trial counsel, Bertram L. Johnson, Douglas Monds, Anthony Lewis, Elliot Allen, and the attorneys who were present when the trial court judge gave the three jury instructions that this Court has deemed to have been supplemental jury instructions. [4]  The Court also requests that the parties provide prior to the evidentiary hearing a copy of the original instructions that were provided to the jury.  The Court further orders that petitioner be present for the evidentiary hearing **scheduled for Tuesday, May 17, 2011 at 2:00 p.m.**

SO ORDERED.

                                                S/Paul D. Borman  
                                                PAUL D. BORMAN  
                                                UNITED STATES DISTRICT JUDGE

Dated:  March 21, 2011

---

[4]  The names of these attorneys are not completely legible from the judge's responses to the jury questions.

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 21, 2011.

S/Denise Goodine
Case Manager
