**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RODRIQUES JACKSON,

                Petitioner,

                                       CIVIL NO. 2:09-CV-11928

v.                                      HONORABLE PAUL D. BORMAN
                                       UNITED STATES DISTRICT COURT

NICK LUDWICK,

                Respondent.

_____/

**OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS
CORPUS, AND DENYING (2) A CERTIFICATE OF APPEALABILITY.**

      Rodriques Jackson, ("Petitioner"), presently confined at the St. Louis Correctional

Facility in St. Louis, Michigan, has filed a petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In his application, filed by attorney Lawrence J. Bunting, petitioner challenges

his conviction for three counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(e);

and three counts of felony-firearm, M.C.L.A. 750.227b.  For the reasons stated below, the

petition for writ of habeas corpus is **DENIED.**

**I. BACKGROUND**

      Petitioner was convicted of the above offenses following a jury trial in the Oakland

County Circuit Court.  Petitioner was also found not guilty of one count of first-degree criminal

sexual conduct, one count of third-degree criminal sexual conduct, and one count of felony-

firearm.

      Petitioner's counsel has provided a detailed statement of facts in his memorandum in

support of the petition for writ of habeas corpus. [1]   Respondent has not contested this recitation

of the facts.  The Court will therefore accept the factual allegations contained within the habeas

petition insofar as they are consistent with the record, because the respondent has not disputed

them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).  Because the facts of

this case have been repeated numerous times, they need not be repeated here in their entirety.

Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp.

844, 847 (E.D. Mich. 1997).

The victim testified that she met petitioner through her foster mother.  The victim

testified that petitioner sexually assaulted her several times at gunpoint in his apartment in Royal

Oak Township, Michigan.  The victim reported the assaults to the police the following day.  The

police subsequently recovered a Ruger 9 mm weapon, a gun magazine, and ammunition from

petitioner's apartment.  Dr. Jeffrey Thewes, who examined the victim following the sexual

assault, testified that she reported being raped.  The victim had pain in her thighs and Dr. Thewes

noticed a small amount of vaginal swelling.  Dr. Thewes opined that from her physical condition,

the victim presented herself as a person who had been sexually assaulted and not one who had

engaged in consensual sex.  Petitioner's defense at trial, presented through his testimony and that

of other witnesses, was that the victim had engaged in consensual sex with him.

Petitioner's conviction was affirmed on appeal. *People v. Jackson,* No. 273310

(Mich.Ct.App. December 27, 2007); *lv. den.* 481 Mich. 878, 748 N.W.2d 833 (2008).

On May 20, 2009, petitioner filed his petition for a writ of habeas corpus, in which he

---

[1]  *See* Memorandum in Support of Petition for Habeas Relief Corpus, pp. 6-17 [This Court's Dkt Entry #
1].

2

seeks a writ of habeas corpus on the following grounds:

> I.  Petitioner was denied due process because his defense attorney was structurally ineffective by not appearing during the jury deliberations phase of the trial.

> II.  Petitioner was denied effective assistance of counsel when his trial counsel intentionally introduced evidence that Petitioner exercised his right to remain silent after he was issued *Miranda* warnings.

> III.  Petitioner was denied a fair trial due to the prosecutor's remarks during her closing argument. [2]

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act

of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> > (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

---

[2]  The petition for writ of habeas corpus originally also included a claim that the petitioner was denied his right to confrontation when the trial court refused to permit him to inquire into the victim's prior allegations of rape. This was numerically listed as the third claim in the petition.  Respondent moved to dismiss the petition on the ground that this claim had not been exhausted with the state courts.  In *lieu* of dismissing the petition for writ of habeas corpus, this Court permitted petitioner to delete this claim from his petition and ordered respondent to file an answer addressing the merits of the three exhausted claims. *See Jackson v. Ludwick*, No. 09-cv-11928, 2010 WL 376114 (E.D. Mich. Jan. 25, 2010).  In light of the fact that petitioner's Confrontation Clause claim has been deleted, this Court has renumbered his prosecutorial misconduct claim, which was numerically petitioner's fourth claim in his original petition, as his third claim.

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that: "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

4

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,*

131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not

completely bar federal courts from relitigating claims that have previously been rejected in the

state courts, it preserves the authority for a federal court to grant habeas relief only "in cases

where there is no possibility fairminded jurists could disagree that the state court's decision

conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view

that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v.

Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Therefore, in

order to obtain habeas relief in federal court, a state prisoner is required to show that the state

court's rejection of his claim "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington,* 131 S. Ct. at 786-87.

## III. DISCUSSION

### A.  Claims # 1 and # 2.  The ineffective assistance of counsel claims.

The Court will consolidate petitioner's ineffective assistance of counsel claims together

for judicial clarity.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must

demonstrate that, considering all of the circumstances, counsel's performance was so deficient

that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome

5

a strong presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id*. In other words, petitioner must overcome the presumption that,

under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466

U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.

To demonstrate prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland,* 466 U.S. at 694.  As the Sixth Circuit noted recently in *Storey v. Vasbinder*,

__F.3d__, 2011 WL 4336660, at *6 (6th Cir. 2011): "*Strickland's* test for prejudice is a

demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'

[*Harrington* v.] *Richter*, 131 S.Ct. [770] at 792 [2011]."

More importantly, on habeas review, "the question 'is not whether a federal court

believes the state court's determination' under the *Strickland* standard 'was incorrect but

whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v.*

*Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473

(2007)).  "The pivotal question is whether the state court's application of the *Strickland*

standard was unreasonable.  This is different from asking whether defense counsel's

performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.

Indeed, "because the *Strickland* standard is a general standard, a state court has even more

latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129

S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1)

standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a

habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state

6

court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

> *Harrington v. Richter*, 131 S. Ct. at 788.

> Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

> Petitioner first alleges that he was denied the effective assistance of counsel because his retained counsel was not present during jury deliberations when the trial court answered several notes from the jury or when the verdict was announced. Petitioner contends that the absence of his retained counsel during these critical stages of his prosecution is a structural error that requires the automatic reversal of his conviction.

> In the middle of petitioner's trial, petitioner's counsel, Bertram L. Johnson, failed to appear at trial because of a medical condition. Trial was adjourned for the day. (Tr. Vol. III, pp. 241-42).

> Following closing arguments, petitioner's defense counsel informed the trial court judge that he might have to go to the hospital. Then, the following exchange occurred:

THE COURT: Now, Mr. Johnson has received a message that he may have to go to the hospital this morning, is that correct?

MR. JOHNSON: Yeah. This afternoon, Judge. I'm still - -

THE COURT: Who are you going to have stand in for you?

MR. JOHNSON: I'll try to find somebody.

THE COURT: It's necessary that you have someone.

MR. JOHNSON: I know. I know.

THE COURT: Now, your son is not finished with law school; is that right?

MR. JOHNSON: No Judge. I'll see if I can find something locally. I'll call around.

THE COURT: Okay.

(Tr. Vol. V, pp. 670-71).

At the end of the first day of deliberations, attorney Richard Lustig stood in for Mr. Johnson when the trial court judge discharged the jury for the day. The judge had asked petitioner if it would be okay for Mr. Lustig to stand in for Mr. Johnson, and petitioner replied affirmatively. Mr. Lustig informed the court that he would be unable to be present for jury deliberations the following day, but advised the court that there "will be a hundred lawyers here that can do this, if there's a problem." The prosecution advised the court that an attorney named Mr. Allen was "in the wings." (*Id.* at pp. 672-73).

Jury deliberations continued on June 20, 2006. At 3:31 p.m., the court went into session on petitioner's case. An attorney named Douglas Monds informed the judge that he was standing in for Bertram Johnson. It is unclear from the transcript whether petitioner was in the courtroom for the proceedings. The trial court judge informed the prosecutor and Mr. Monds

8

that he had received conflicting messages from the jury.  The first note indicated that the jury had reached a verdict, but three minutes later, the jury sent out another note asking, "Does a CSC [criminal sexual conduct] count with a gun in the room, does that automatically mean guilty of [the] firearm charge?"  The judge stated that he had sent a note to the jury with the "approval of counsel" that the jury should refer to the jury instructions.  Subsequently, the judge indicated that the jury sent out a message indicating that they were hung.  With the permission of counsel, the judge sent a note to the jury to tell them to continue their deliberations because the jury had only been out less than a day. At 4:35 p.m., the case was again called into session in court, with an attorney named Elliot Allen for the defense.  The jury was sent home for the day. (Tr. Vol. VI, pp. 678-82).

The jury returned a verdict at 2:32 on June 21, 2006.  The defense attorney appearing was Anthony Lewis.  When Mr. Lewis indicated that he was standing in for Mr. Johnson with petitioner's permission and asked him if that was okay, petitioner did not object.  Prior to accepting the verdict, the judge indicated that there had been a "myriad of questions asked by the jury" and ordered that all of the jurors' notes be filed with the court record. (Tr. VII, pp. 688-89).  Although petitioner failed to attach these jury notes to his petition, he did attach these jury notes as Appendix A to his application for leave to appeal to the Michigan Supreme Court, which this Court has reviewed. [3]

In rejecting petitioner's claim, the Michigan Court of Appeals ruled that petitioner's claim should be analyzed under the ineffective assistance of counsel test of *Strickland v. Washington, supra,* rather than the presumed prejudice test of *United States v. Cronic, infra.*

---

[3]  *See* Application for Leave to Appeal, Appendix A [Court Dkt. # 6-12].

9

*Jackson,* Slip. Op. at * 2.  The Michigan Court of Appeals concluded:

> The record reveals that defendant's retained counsel was not present during jury deliberations because of a medical condition.  During deliberations, the jury sent several notes to the trial court.  In response to the notes, the trial court encouraged the jury to continue its deliberations, handled "administrative" and "housekeeping" matters, and referred the jury to the previously provided instructions.  In only one instance did the trial court provide a "substantive" instruction.  In response to a juror's inquiry, the trial court instructed the jury that a "gun does not have to be pointed to be a threat."  We agree with defendant that this particular communication between the court and the jury constituted a "critical stage" of the proceedings necessitating defendant's right to counsel.  That said, however, defendant cannot establish that he was completely deprived of the assistance of counsel during this "critical stage" of the proceedings.  Substitute counsel represented defendant throughout jury deliberations, without objection from defendant.  Defendant's substitute counsel signed the trial court's proposed responses to the jury's notes, indicating their approval of the court's instructions.  Accordingly, we find the presumed prejudice test of *Cronic, supra,* inapplicable here.
>
> Further, defendant has failed to show actual prejudice as a result of his retained counsel's absence during jury deliberations.  Substitute counsel stood in for defendant's retained counsel throughout deliberations, and we disagree with defendant's assertion that "it was reversible error for [the jury's] questions to be reviewed by 'fill in' attorneys who could have had no real knowledge of the case."  As indicated above, the majority of the communications between the jury and the trial court were "administrative" or "housekeeping" in nature and are presumed to be nonprejudicial.  Furthermore, while the trial court provided one substantive instruction to the jury, that a "gun does not have to be pointed to be a threat," the instruction involved a question of law that any competent substitute attorney could review.  Moreover, defendant has provided no evidence that he was actually prejudiced as a result of the instruction.  Because defendant has failed to demonstrate how his retained counsel's presence during jury deliberations would have altered the outcome of the case, his ineffective assistance of counsel claim must fail.

*Jackson,* Slip. Op. at 2-3 (internal citations omitted).

On March 21, 2011, this Court granted petitioner an evidentiary hearing on his first

claim involving the absence of his retained counsel during jury deliberations. *Jackson v.*

*Ludwick*, No. 09-cv-11928, 2011 WL 1058930 (E.D. Mich. March 21, 2011).  An evidentiary

hearing was held before this Court on July 27, 2011. [4]

The United States Supreme Court has clearly established that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice. *United States v. Cronic*, 466 U.S. 648, 659 (1984). The existence of certain structural defects in a trial, such as the deprivation of the right to counsel, requires automatic reversal of the conviction because it infects the entire trial process. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). The United States Supreme Court has routinely found constitutional error without any specific showing of prejudice to a defendant when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceedings. *Cronic*, 466 U.S. at 659, n. 25; *United States v. Minsky*, 963 F. 2d 870, 874 (6th Cir. 1992).

The giving of a supplemental jury instruction is a critical stage of the criminal proceeding. *Rushen v. Spain*, 464 U.S. 114,119, n. 4 (1983); *French v. Jones,* 332 F. 3d 430, 438-39 (6th Cir. 2003). Re-instructing a jury is also a critical stage of the proceedings for purposes of the Sixth Amendment right to counsel. *See Caver v. Straub,* 349 F. 3d 340, 350 (6th Cir. 2003). However, the trial court's re-reading of jury instructions that have previously been given to the jury is not a critical stage of the criminal proceedings, for Sixth Amendment purposes. *Hudson v. Jones,* 351 F. 3d 212, 216-18 (6th Cir. 2003). Likewise, the return of a jury verdict is a critical stage of the proceedings for Sixth Amendment purposes. *See United States v. Smith,* 411 F.2d 733, 736 (6th Cir. 1969).

---

[4] Respondent has objected to the evidentiary hearing on the basis of the recent case of *Cullen v. Pinholster,* 131 S. Ct. 1388 (2011) in which the Supreme Court held that when a state court has adjudicated a claim on the merits, a habeas petitioner is not entitled to an evidentiary hearing on his claim. It is unnecessary for the Court to resolve this issue because even if the Court was permitted to consider the evidence that was presented at the evidentiary hearing to adjudicate petitioner's first claim, petitioner is not entitled, as a matter of law, to relief on his claim.

Petitioner is not entitled to the presumption of prejudice regarding the absence of his retained counsel during jury deliberations because he was represented by a "stand in" counsel with respect to each of the jury questions and at the time that the verdict was read.  The United States Supreme Court has never addressed "whether 'stand in' counsel solves the problem of an absent counsel." *See Carroll v. Renico*, 475 F. 3d 708, 713 (6th Cir. 2007).   Although the Supreme Court in *Cronic* held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice, the Supreme Court has never addressed whether providing "stand in" counsel for a defendant remedies the problem of an absent counsel.  Because no United States Supreme Court precedent has ever dealt with the issue of "stand in" counsel, the Michigan Court of Appeals did not engage in an unreasonable application of Supreme Court caselaw when they concluded that petitioner was not denied the assistance of counsel during jury deliberations and the taking of the jury verdict, in light of the fact that he was represented by "stand in" counsel at these proceedings. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006); *See also Carroll v. Renico*, 475 F. 3d at 712-14 (petitioner's right to counsel was not denied when co-defendant's counsel stood in for petitioner's counsel during portion of the reinstruction of the jury; co-defendant's attorney objected to conspiracy instruction on behalf of both defendant and co-defendant); *United States v. Dykes,* 460 F. 2d 324, 325 (9th Cir. 1972)(defendant was not deprived of effective representation of counsel because a substitute defense attorney was present when the jury was instructed where defendant expressed no objection when substitute attorney introduced himself to court and explained why defendant's regular attorney could not be present and instructions given were standard); *United States v. Stewart,* 435 F.2d 711 (5th

12

Cir. 1970)(where counsel who was substituted after defendant's original counsel was compelled to depart from trial due to death of his father was present in courtroom at all times during proceedings after original counsel departed and no prejudice to defendant was discernible, defendant was not denied effective assistance of counsel following original counsel's departure); *United States v. Clayton*, 418 F. 2d 1274, 1276 (6th Cir. 1969)(defendant's agreement to having co-defendant's counsel serve as his counsel for purpose of receiving verdict constituted knowing and intelligent waiver of right to have counsel present when verdict was received, and in any event no error occurred in view of fact that at request of substitute counsel jury was polled as to the verdict against each defendant).

Moreover, although a criminal defendant must knowingly and intelligently waive his right to counsel, *see Brewer v. Williams,* 430 U.S. 387, 404 (1977) and *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), the Supreme Court has never required a trial court to ask a defendant whose counsel is not present whether he or she consents to "stand in" counsel or to insure that the defendant's consent to "stand in" counsel is informed. *Carroll,* 475 F. 3d at 713.  Because the Supreme Court, in the context of discussing the waiver of counsel issue, has never addressed the question of whether an attorney who briefly stands in for counsel of record has deprived a defendant of his or her Sixth Amendment rights, *id.,* the trial court's failure to obtain a waiver of counsel on the record from petitioner before permitting substitute counsel to stand in for petitioner's counsel of record was not contrary to, or an unreasonable application of clearly established federal law, so as to entitle petitioner to habeas relief.  In any event, petitioner did not object on the record when his retained counsel indicated that he could not be present during jury deliberations and would have to rely on substitute counsel.  Petitioner, in fact, agreed on

13

the record to allow Richard Lustig stand in for retained counsel at the end of the first day of the deliberations and did not object when Mr. Lustig indicated that another attorney would have to stand in for retained counsel the following day.  Petitioner did not object when Anthony Lewis stood in for retained counsel at the time of the verdict.

In light of the fact that petitioner was represented by "stand in" counsel throughout the jury deliberations and the taking of the verdict, petitioner was not actually or constructively denied the assistance of counsel.  The appropriate standard for reviewing petitioner's claim would be the *Strickland* standard, in which petitioner would be required to show that "stand in" counsel's performance was deficient, and that the deficient performance actually prejudiced the defense. *See Miller v. Leonard,* 65 F. App'x. 31, 34-35 (6th Cir. 2003)(applying *Strickland* standard in rejecting claim that "stand in" counsel was ineffective for failing to object to trial court's supplemental jury instruction).

In the present case, petitioner has failed to offer any argument as to how he was prejudiced by the use of "stand in" counsel during the jury deliberations and the taking of the verdict.  Most of the jury notes involved housekeeping or administrative matters that any lawyer could have responded to.  Petitioner has not identified how he was prejudiced by "stand in" counsel with respect to any of these notes.

The Michigan Court of Appeals acknowledged that the trial court provided a substantive instruction which constituted a critical stage of the proceedings when in response to a juror's inquiry, the trial court instructed the jury that a "gun does not have to be pointed to be a threat." M.C.L.A. 750.520b (1)(e)defines first-degree criminal sexual conduct as follows, for purposes of petitioner's conviction:

> "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exist:
>
> (e) The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon."

Although the first-degree criminal sexual conduct statute requires that the defendant be armed with a weapon at the time of the assault, "it does not necessarily require that sexual penetration be accomplished by force.  It does not require the actor, armed with a weapon, to use the weapon in order to accomplish sexual penetration." *People v. Sparks*, 82 Mich. App. 44, 53; 266 N.W.2d 661 (1978).  Moreover, under Michigan law, a defendant does not need to actually be in possession of a weapon during the commission of a sexual assault so long as the weapon is "reasonably accessible" to the defendant. *People v. Davis*, 101 Mich. App. 198, 200-03; 300 N.W.2d 497 (1980)(holding that although at the time of the sexual penetration the defendant's rifle was lying six feet away, defendant was properly found to have been "armed with a weapon" within meaning of first-degree criminal sexual offense statute where the only other persons present were the two victims and a codefendant; defendant had constructive possession of the weapon when penetration occurred).  Other cases have reached the same conclusion. *See People v. Flanagan*, 129 Mich. App. 786, 797-98; 342 N.W.2d 609 (1983)(Where testimony showed that knife was located on seat next to defendant during assaults, and that, after initial sexual assaults, defendant retrieved knife from seat beside him and held it in his teeth during further assaults, evidence produced at trial clearly established that weapon was accessible, and, therefore, possessed by defendant during assaults).  Because a defendant need not use the weapon to effectuate the sexual assault or even have the weapon in his actual possession at the time of the sexual assault, the judge's instruction was an accurate

15

reflection of Michigan law.

The Michigan Court of Appeals ruled that none of the remaining responses by the judge to the jurors involved a critical stage of the proceedings because the answers involved either housekeeping matters or the re-reading of instructions previously given to the jurors. The Michigan Court of Appeals, however, ignored the judge's response to the following jury question:

"On the possession of firearm counts.

Please explain the first element when it states that it must be proven that the CSC [criminal sexual conduct] was committed, but it is not necessary that the defendant be convicted of that crime.

These points appear to be contradictory."

The Court answered: "These are words of ordinary meaning. There is not a contradiction."

Although an element of felony-firearm is the commission or the attempted commission of a felony, it is not necessary under Michigan law for a defendant to be convicted of a felony or the attempt to commit a felony in order to be convicted of felony-firearm. *Patterson v. Caruso,* 219 F. App'x. 451, 454-55 (6th Cir. 2007)(citing *People v. Lewis*, 415 Mich. 443, 454-55; 330 N. W. 2d 16 (1982)). The judge's answer to the jurors' question was an accurate reflection of Michigan law.

Later, the jurors sent the following note to the judge:

"A juror wants to use 'lack of struggle' by the victim and not 'attempting to flee' by the victim as a basis for a decision. Please state the law. The rest of the jury believes that a 'no' by the victim is enough and struggle and fleeing is not necessary. Please state the law."

The judge sent the following note to the jurors:

16

"The prosecutor does not have to show that the victim struggled or fled.  Please refer to CJI 20.26."

Although the judge previously gave the jury CJI 2d 20.26 (Tr. Vol. V, p. 661), the trial court judge's response to the jurors' question was somewhat different than the standard language of CJI 2d 20.26, which states: [T]o prove this charge, the prosecutor does not have to show that [the complainant] resisted the defendant."  Nonetheless, the concepts contained within the supplemental instruction appear to be consistent with the idea that a sexual assault victim does not need to resist the defendant.  Petitioner has therefore failed to show that "stand in" counsel was ineffective for failing to object to this instruction.

Finally, the judge, in response to the jurors' question, defined "indicia" as an "indication."  However, the American Heritage Dictionary of the English Language (4th Ed. 1980) defines "indicia" as an "indication."  Accordingly, there was nothing improper about this instruction.

Lastly, the Court notes that when the judge on the second day of deliberations was informed that the jury was deadlocked, he sent a note to the jury to tell them to continue their deliberations because the jury had only been out less than a day.

It is axiomatic that "a trial court may properly encourage a deadlocked jury to continue its deliberations and attempt to reach a verdict." *United States v. Aloi,* 9 F. 3d 438, 443 (6th Cir. 1993)(citing *Allen v. United States*, 164 U.S. 492, 501–02 (1896)).  "A charge that strays too far from the charge approved in *Allen* will rise to the level of a constitutional violation only if 'in its context and under all the circumstances, [the charge] . . . was coercive.'" *Id.* (quoting *Williams v. Parke*, 741 F. 2d 847, 850 (6th Cir. 1984)(quoting *Jenkins v. United States*, 380 U.S. 445, 446(1965)).  In the present case, the judge's instruction to the jurors to continue

17

deliberating because they had only been out for less than a day was not unduly coercive, because the judge "did not pressure a decision in a particular direction." *United States v. Lash*, 937 F. 2d 1077, 1086 (6th Cir. 1991).

In light of the fact that none of the trial judge's supplemental instructions were incorrect, the Michigan Court of Appeals reasonably applied *Strickland* in determining that petitioner had failed to establish that he was actually prejudiced by retained counsel's absence during jury deliberations. Moreover, although petitioner claims that none of the "stand in" counsel consulted with him prior to approving the judge's supplemental instructions, petitioner is not entitled to relief because he has failed to show how this lack of consultation prejudiced him. *See e.g. Bowling v. Parker,* 344 F. 3d 487, 506 (6th Cir. 2003)(trial attorneys' alleged failure to consult with defendant did not prejudice defendant in capital murder case, where defendant failed to show how additional consultation with his attorneys could have altered outcome of trial). Petitioner is not entitled to habeas relief on his first claim.

Petitioner next contends that he was deprived of the effective assistance of counsel when his attorney elicited testimony from the officer-in-charge that petitioner had exercised his right to remain silent after being advised of his *Miranda* rights. The Michigan Court of Appeals rejected petitioner's claim:

> At trial, defendant testified that he and the victim engaged in consensual sexual intercourse and that after his arrest no one advised him of his constitutional rights or asked him to make a statement. Defense counsel argued that the police officers who investigated the incident failed to conduct "objective police work" and consider defendant's "side of the story." During cross-examination of the officer-in-charge, defense counsel asked if there was "any evidence in this case that anybody, at any point in time, took a statement [from defendant] or attempted to investigate [him] regarding his version of the facts of this case?" The officer testified that after being arrested and advised of his *Miranda* rights, defendant refused to make a statement. On redirect, the officer further testified that defendant

18

"invoked his Constitutional right to remain silent."

Defendant has failed to establish that defense counsel's question to the officer-in-charge constituted anything but sound trial strategy. This case hinged on the credibility of the witnesses, and defense counsel apparently sought to undermine the credibility of the police witnesses by demonstrating their decision to believe the victim's version of the facts and their unwillingness to learn defendant's "side of the story." We will not substitute our judgment for that of counsel regarding matters of trial strategy. The fact that defense counsel's strategy ultimately failed does not amount to ineffective assistance of counsel. Moreover, the jury heard defendant testify that he and the victim engaged in consensual sexual intercourse and the jury apparently rejected defendant's version of the events. The credibility of the witnesses is within the province of the jury. Therefore, defendant cannot establish that the outcome of the case would have been different but for defense counsel's alleged error in questioning the officer-in-charge.

Defendant has failed to overcome the presumption of effective assistance of counsel. Reversal is not warranted.

*Jackson,* Slip. Op. at * 3-4 (internal citations omitted).

Counsel's performance in eliciting prejudicial testimony from the officer in charge that petitioner had exercised his Fifth Amendment right to remain silent was not deficient, so as to support petitioner's ineffective assistance of counsel claim, since the questions were part of a legitimate strategy to cast doubt on the prosecution's case or of the witnesses who testified. *See Campbell v. United States*, 364 F.3d 727, 734-35 (6th Cir. 2004). The Michigan Court of Appeals concluded that counsel's questions to the officer in charge were likely part of his strategy to show that the police had decided to believe the victim's story and were unwilling to speak to petitioner and obtain his "side of the story." Defense counsel is not ineffective for eliciting testimony about a defendant's exercise of his right to remain silent when it is part of a valid trial strategy. *See Hall v. Vasbinder,* 563 F. 3d 222, 237 (6th Cir. 2009)(counsel's failure to object to prosecutor's closing argument and rebuttal argument which questioned defendant's silence during state probate court hearing at which defendant's daughter was placed in foster

care was not deficient in criminal sexual conduct prosecution, as element of claim of ineffective assistance; defendant's silence was first raised by defense counsel as part of his trial strategy to elicit sympathy from jury by claiming that the probate hearing was rushed). Because the Michigan Court of Appeals was not objectively unreasonable in finding that counsel was not deficient in eliciting testimony in reference to petitioner's invocation of his right to remain silent, it is unneccesary for this Court to reach the issue of prejudice. Petitioner is not entitled to habeas relief on his first or second claims.

### C.   Claim # 3.   The prosecutorial misconduct claim.

Petitioner finally claims that he was deprived of a fair trial due to prosecutorial misconduct when the prosecutor called petitioner a "predator" during closing arguments. [5]

The Michigan Court of Appeals rejected petitioner's claim:

> We acknowledge that in calling defendant "a predator," the prosecutor did not use the blandest of all possible terms. The prosecutor's remarks were, however, supported by the evidence and responsive to defendant's theory that he and the victim engaged in consensual sexual intercourse. In *People v. McElhaney*, 215 Mich.App 269, 285; 545 NW2d 18 (1996), this Court found that calling the defendant "a monster" because he committed the charged offenses was permissible commentary on the evidence. Likewise, in this case, the evidence supported the assertion that defendant invited his girlfriend's foster daughter into his apartment, brandished a gun, and forced her to engage in vaginal intercourse and oral sex, arguably making him a "predator." Moreover, even if the prosecutor went too far in repeatedly calling defendant a "predator," the trial court cured any potential for error by instructing the jury that the lawyers' statements and arguments were not evidence. Therefore, defendant cannot establish that the prosecutor's statements

---

[5]   Respondent contends that petitioner's third claim is procedurally defaulted because he failed to object to the prosecutor's remarks. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Given that the prosecutor's argument did not deny petitioner a fair trial, it would be easier to address the claim on the merits.

affected the outcome of the trial, and reversal is not required.

*Jackson,* Slip. Op. at * 5-6.

To prevail on a claim of prosecutorial misconduct, a petitioner must show that the alleged misconduct infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Byrd v. Collins*, 209 F. 3d 486, 529 (6th Cir. 2000) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986))(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Courts must keep in mind that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Therefore, even if the prosecutor's conduct was 'undesirable or even universally condemned,' *Darden*, 477 U.S. at 181 (quotation marks and citations omitted), it does not constitute a due process violation unless the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" *Byrd*, 209 F. 3d at 529 (end citations omitted). Moreover, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645).

The Sixth Circuit has held several times that the use of the term "predator" by the prosecutor to describe a defendant does not deprive a defendant of a fair trial. *See United States v. Davis,* 514 F.3d 596, 616 (6th Cir. 2008)(prosecutor's unobjected-to statement during closing argument referring to drug defendant as a "predator," did not result in plain error, and thus did not warrant reversal of defendant's conviction); *Byrd,* 209 F. 3d at 536 (prosecutor's use of

21

"predator" three times during closing argument to describe murder defendant did not deprive
petitioner of a fair trial).  Moreover, when combined with the instruction from the trial judge
that the attorneys' arguments, questions, and statements were not evidence, the prosecutor's
isolated comments calling petitioner a predator did not render the entire trial fundamentally
unfair. *Byrd,* 209 F. 3d at 533.

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a
certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must
make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To
demonstrate this denial, the applicant is required to show that reasonable jurists could debate
whether, or agree that, the petition should have been resolved in a different manner, or that the
issues presented were adequate to deserve encouragement to proceed further. *Slack v.
McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's
constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists
would find the district court's assessment of the constitutional claims to be debatable or wrong.
*Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a
final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.
§ 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of
appealability because reasonable jurists would not find this Court's assessment of petitioner's
claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002).

## IV.  CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.  The Court further **DENIES** a certificate of appealability.

**SO ORDERED.**

S/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 20, 2011

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 20, 2011.

S/Denise Goodine_____
Case Manager

23